SLT:TAD/PEN/AHT
F.# 2009R01065/OCDETF# NY-NYE-616

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    – against –

JOAQUIN ARCHIVALDO GUZMAN LOERA,
     also known as "El Chapo," "El
     Rapido," "Chapo Guzman,"
     "Shorty," "El Senor," "El
     Jefe," "Nana," "Apa," "Papa,"
     "Inge" and "El Viejo," and
ISMAEL ZAMBADA GARCIA,
     also known as "El Mayo," "Mayo
     Zambada," "Doctor," "La Doc,"
     "Doctora," "El Lic," "Mike"
     and "Mayo El Senor,"

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>09-466(SLT)(S-1)</u>
(T. 21, U.S.C., §§ 841(a)(1),
  841(b)(1)(A)(i),
  841(b)(1)(A)(ii)(II), 846,
  848(a), 848(b), 848(c),
  853(a), 853(p), 959(a),
  959(c), 960(a)(1), 960(a)(3),
  960(b)(1)(A), 960(b)(1)(B)(ii)
  960(b)(1)(G), 960(b)(1)(H),
  and 963;
T. 18, U.S.C., §§ 2,
  924(c)(1)(A)(i),
  924(c)(1)(A)(ii),
  924(c)(1)(A)(iii), 924(c)(1)(B)(ii),
  924(d), 1956(h), 3238 and 3551
  <u>et seq</u>.)

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

At all times relevant to this Indictment, unless otherwise indicated:

1.     Since the late 1980s, the Mexican Federation, also known as the

"Federation," "La Federacion," the "Sinaloa Cartel" and the "Alliance," existed as an

organized crime syndicate founded upon longstanding relationships between Mexico's major

drug trafficking kingpins.  The Federation functioned as a council with representatives from

the respective drug trafficking organizations of its principal leaders, the defendants JOAQUIN

ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo

Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and

ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La

Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," and others.  In the early 2000s,

conflicts developed between drug trafficking kingpins within the Federation and the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA

GARCIA.  A series of internal wars occurred, and the Federation dissolved.  The defendants'

faction of the Federation became known as the Sinaloa Cartel, which was the largest drug

trafficking organization in the world.  The vast majority of drugs trafficked by the Sinaloa

Cartel were imported into United States, where the drugs were consumed.  The Sinaloa

Cartel's drug sales in the United States generated billions of dollars in profit.  The drug

proceeds were then laundered back to Mexico; often the drug money was physically

transported from the United States to Mexico in vehicles containing hidden compartments and

through other clandestine means.

       2.     The Sinaloa Cartel operated through cooperative arrangements and close

coordination with South American cocaine sources of supply.  Through a network of corrupt

police and political contacts, the Federation directed a large scale narcotics transportation

network involving the use of land, air and sea transportation assets, shipping multi-ton

quantities of cocaine from South America, through Central America and Mexico, and finally

into the United States.  In addition, the Sinaloa Cartel manufactured and imported multi-ton

2

quantities of heroin, methamphetamine and marijuana into the United States.  While at times

there have been rifts and infighting among the leaders of the Sinaloa Cartel, they generally

coordinated their criminal activities, shared and controlled Mexico's trafficking routes,

resolved conflicts over territory, minimized inter-organization violence and ensured their

common political and judicial protection.

      3.    The defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and

ISMAEL ZAMBADA GARCIA also employed "sicarios," or hitmen, who carried out

hundreds of acts of violence, including murders, assaults, kidnappings, assassinations and acts

of torture at the direction of the defendants.  The defendants directed and ordered these acts of

violence for a variety of reasons, including but not limited to:

      a.    Promoting and enhancing the prestige, reputation and position of

the Sinaloa Cartel with respect to rival criminal organizations;

      b.    Preserving and protecting the power, territory and criminal

ventures of the Sinaloa Cartel, including but not limited to the Sinaloa Cartel's control over

drug trafficking routes over the U.S.-Mexico border;

      c.    Dissuading Mexican law enforcement officers, members of the

Mexican military and other public officials in Mexico from enforcing Mexican drug laws and

disrupting the Sinaloa Cartel's activities;

      d.    Enforcing discipline amongst its members and associates by

punishing disloyalty and failure; and

e.     Protecting members of the Sinaloa Cartel from arrest and

prosecution by silencing potential witnesses and retaliating against anyone who provided

information or assistance to law enforcement authorities.

COUNT ONE<br/>(Continuing Criminal Enterprise)

4.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

5.     In or about and between January 1989 and September 2014, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El

Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge"

and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo

Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together

with others, did knowingly and intentionally engage in a continuing criminal enterprise, in that

the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA

GARCIA committed violations of Title 21, United States Code, Sections 841(a), 846, 848(e),

952(a), 959(a), 960(a) and 963, including Violations One through One Hundred Nintey-Five

set forth below, which violations were part of a continuing series of violations of those statutes

undertaken by the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL

ZAMBADA GARCIA, in concert with five or more other persons, with respect to whom the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA

4

GARCIA occupied supervisory and management positions, and were each one of several

principal administrators, organizers and leaders of the continuing criminal enterprise, and from

which continuing series of violations the defendants JOAQUIN ARCHIVALDO GUZMAN

LOERA and ISMAEL ZAMBADA GARCIA obtained substantial income and resources, and

which enterprise received in excess of $10 million in gross receipts during one or more twelve-

month periods for the manufacture, importation and distribution of cocaine.  The violations

involved at least 300 times the quantity of a substance described in Section 841(b)(1)(B) of

Title 21, United States Code, to wit: 150 kilograms or more of a substance containing cocaine.

The continuing series of violations, as defined by Title 21, United States Code, Section 848(c),

includes the following violations set forth below:

<u>Violations One Through One Hundred Sixty-Three</u>
(International Cocaine Distribution –
Approximately 457,212 Kilograms of Cocaine)

6.     On or about the dates listed below, all dates being approximate and

inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN

ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offenses involved a substance containing cocaine, a Schedule II

controlled substance, in the amounts listed below, contrary to Title 21, United States Code,

Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code,

Section 2:

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 1 | 3,082 Kilograms | February 2014 |
| 2 | 373 Kilograms | January 15, 2014 |
| 3 | 434 Kilograms | June 6, 2013 |
| 4 | 1,560 Kilograms | May 2, 2010 |
| 5 | 1,000 Kilograms | October 7, 2009 |
| 6 | 5,000 Kilograms | December 29, 2008 |
| 7 | 450 Kilograms | December 2008 |
| 8 | 5,000 Kilograms | September 13, 2008 |
| 9 | 5,000 Kilograms | September 9-12, 2008 |
| 10 | 3,900 Kilograms | July 15, 2008 |
| 11 | 7,000 Kilograms | June 16, 2008 |
| 12 | 3,600 Kilograms | May 10, 2008 |
| 13 | 4,800 Kilograms | December 2007 |
| 14 | 2,132 Kilograms | November 11, 2007 |
| 15 | 23,000 Kilograms | October 2007 |
| 16 | 1,810 Kilograms | September 28, 2007 |
| 17 | 1,810 Kilograms | August 16, 2007 |
| 18 | 1,810 Kilograms | July 28, 2007 |
| 19 | 1,810 Kilograms | July 8, 2007 |

| 20 | 1,810 Kilograms | June 16, 2007 |
| 21 | 1,810 Kilograms | May 27, 2007 |
| 22 | 1,810 Kilograms | May 14, 2007 |
| 23 | 640 Kilograms | April 30, 2007 |
| 24 | 4,336 Kilograms | April 15, 2007 |
| 25 | 19,000 Kilograms | March 18, 2007 |
| 26 | 1,870 Kilograms | January 15, 2007 |
| 27 | 2,000 Kilograms | January 2007 |
| 28 | 9,000 Kilograms | January 2007 – December 2007 |
| 29 | 7,000 Kilograms | January 2007 – December 2007 |
| 30 | 500 Kilograms | December 2006 |
| 31 | 500 Kilograms | December 2006 |
| 32 | 3,000 Kilograms | November 12, 2006 |
| 33 | 1,420 Kilograms | November 12, 2006 |
| 34 | 2,100 Kilograms | November 10, 2006 |
| 35 | 800 Kilograms | October 20, 2006 |
| 36 | 500 Kilograms | October 11, 2006 |
| 37 | 6,000 Kilograms | September 23, 2006 |
| 38 | 3,000 Kilograms | September 19, 2006 |
| 39 | 1,000 Kilograms | August 29, 2006 |

| 40 | 392 Kilograms | August 29, 2006 |
| 41 | 4,140 Kilograms | August 28, 2006 |
| 42 | 1,108 Kilograms | August 28, 2006 |
| 43 | 2,100 Kilograms | July 18, 2006 |
| 44 | 291 Kilograms | July 10, 2006 |
| 45 | 1,291 Kilograms | July 10, 2006 |
| 46 | 2,463 Kilograms | July 8, 2006 |
| 47 | 1,465 Kilograms | May 21, 2006 |
| 48 | 2,800 Kilograms | May 7, 2006 |
| 49 | 1,095 Kilograms | May 5, 2006 |
| 50 | 3,048 Kilograms | April 9, 2006 |
| 51 | 2,100 Kilograms | April 4, 2006 |
| 52 | 818 Kilograms | April 4, 2006 |
| 53 | 1,000 Kilograms | April 4, 2006 |
| 54 | 900 Kilograms | March 24, 2006 |
| 55 | 340 Kilograms | March 10, 2006 |
| 56 | 2,120 Kilograms | February 11, 2006 |
| 57 | 2,800 Kilograms | February 7, 2006 |
| 58 | 400 Kilograms | February 3, 2006 |
| 59 | 4,467 Kilograms | January 13, 2006 |

| 60 | 1,567 Kilograms | January 11, 2006 |
|----|-----------------|------------------|
| 61 | 811 Kilograms | November 30, 2005 |
| 62 | 1,750 Kilograms | November 5, 2005 |
| 63 | 2,000 Kilograms | November 2005 |
| 64 | 1,200 Kilograms | October 27, 2005 |
| 65 | 1,500 Kilograms | September 30, 2005 |
| 66 | 2,000 Kilograms | August 26, 2005 |
| 67 | 2,040 Kilograms | August 23, 2005 |
| 68 | 1,902 Kilograms | July 28, 2005 |
| 69 | 1,300 Kilograms | July 27, 2005 |
| 70 | 3,971 Kilograms | July 23, 2005 |
| 71 | 1,700 Kilograms | July 11, 2005 |
| 72 | 1,100 Kilograms | July 9, 2005 |
| 73 | 3,120 Kilograms | July 8, 2005 |
| 74 | 4,000 Kilograms | July 6, 2005 |
| 75 | 1,500 Kilograms | June 10, 2005 |
| 76 | 1,811 Kilograms | June 2, 2005 |
| 77 | 2,500 Kilograms | May 24, 2005 |
| 78 | 4,127 Kilograms | April 4, 2005 |
| 79 | 1,300 Kilograms | April 2005 |

| 80 | 2,000 Kilograms | March 16, 2005 |
| 81 | 3,980 Kilograms | March 11, 2005 |
| 82 | 2,000 Kilograms | February 12, 2005 |
| 83 | 1,840 Kilograms | January 27, 2005 |
| 84 | 3,200 Kilograms | January 2005 – February 2005 |
| 85 | 3,063 Kilograms | December 2004 – January 2005 |
| 86 | 1,850 Kilograms | December 22, 2004 |
| 87 | 1,589 Kilograms | December 20, 2004 |
| 88 | 1,562 Kilograms | December 18, 2004 |
| 89 | 2,000 Kilograms | December 14, 2004 |
| 90 | 1,850 Kilograms | November 11, 2004 |
| 91 | 1,500 Kilograms | November 8, 2004 |
| 92 | 1,800 Kilograms | October 31, 2004 |
| 93 | 1,000 Kilograms | October 30, 2004 |
| 94 | 2,000 Kilograms | October 22, 2004 |
| 95 | 1,246 Kilograms | October 22, 2004 |
| 96 | 616 Kilograms | October 11, 2004 |
| 97 | 500 Kilograms | September 25, 2004 |
| 98 | 1,000 Kilograms | September 25, 2004 |
| 99 | 900 Kilograms | September 18, 2004 |

| | | |
|---|---|---|
| 100 | 1,830 Kilograms | September 13, 2004 |
| 101 | 2,745 Kilograms | August 11, 2004 |
| 102 | 1,997 Kilograms | August 31, 2004 |
| 103 | 1,662 Kilograms | August 18, 2004 |
| 104 | 1,500 Kilograms | August 11, 2004 |
| 105 | 12,000 Kilograms | September 4, 2004 |
| 106 | 10,500 Kilograms | September 4, 2004 |
| 107 | 1,888 Kilograms | July 29, 2004 |
| 108 | 1,000 Kilograms | July 1, 2004 |
| 109 | 10,000 Kilograms | July 2004 |
| 110 | 1,000 Kilograms | June 15, 2004 |
| 111 | 548 Kilograms | June 4, 2004 |
| 112 | 1,000 Kilograms | June 3, 2004 |
| 113 | 1,000 Kilograms | May 15, 2004 |
| 114 | 1,400 Kilograms | May 5, 2004 |
| 115 | 10,000 Kilograms | May 2004 – June 2004 |
| 116 | 800 Kilograms | April 2004 |
| 117 | 14,000 Kilograms | April 2004 – December 2004 |
| 118 | 12,000 Kilograms | March 24, 2004 |
| 119 | 2,000 Kilograms | March 20, 2004 |

11

| 120 | 1,000 Kilograms | March 14, 2004 |
|-----|-----------------|----------------|
| 121 | 10,000 Kilograms | March 2004 – April 2004 |
| 122 | 6,000 Kilograms | March 2004 – April 2004 |
| 123 | 1,620 Kilograms | February 23, 2004 |
| 124 | 1,620 Kilograms | February 6, 2004 |
| 125 | 8,000 Kilograms | January 2004 – February 2004 |
| 126 | 1,999 Kilograms | January 25, 2004 |
| 127 | 1,632 Kilograms | January 24, 2004 |
| 128 | 1,956 Kilograms | January 21, 2004 |
| 129 | 6,465 Kilograms | January 2004 |
| 130 | 1,752 Kilograms | December 31, 2003 |
| 131 | 1,455 Kilograms | December 30, 2003 |
| 132 | 1,624 Kilograms | December 16, 2003 |
| 133 | 1,424 Kilograms | December 9, 2003 |
| 134 | 1,800 Kilograms | December 7, 2003 |
| 135 | 1,561 Kilograms | December 1, 2003 |
| 136 | 1,638 Kilograms | November 8, 2003 |
| 137 | 550 Kilograms | November 4, 2003 |
| 138 | 6,000 Kilograms | November 2003 – December 2003 |
| 139 | 619 Kilograms | October 20, 2003 |

| 140 | 776 Kilograms | October 14, 2003 |
| 141 | 234 Kilograms | October 4, 2003 |
| 142 | 3,600 Kilograms | August 2003 – September 2003 |
| 143 | 265 Kilograms | August 13, 2003 |
| 144 | 2,000 Kilograms | August 8, 2003 |
| 145 | 700 Kilograms | July 26, 2003 |
| 146 | 1,860 Kilograms | July 16, 2003 |
| 147 | 300 Kilograms | June 26, 2003 |
| 148 | 288 Kilograms | June 19, 2003 |
| 149 | 1,300 Kilograms | June 12, 2003 |
| 150 | 300 Kilograms | June 10, 2003 |
| 151 | 300 Kilograms | May 31, 2003 |
| 152 | 1,817 Kilograms | May 31, 2003 |
| 153 | 1,282 Kilograms | May 25, 2003 |
| 154 | 2,200 Kilograms | May 14, 2003 |
| 155 | 1,200 Kilograms | May 14, 2003 |
| 156 | 415 Kilograms | April 21, 2003 |
| 157 | 1,237 Kilograms | April 10, 2003 |
| 158 | 460 Kilograms | April 7, 2003 |
| 159 | 600 Kilograms | April 5, 2003 |

| 160 | 1,500 Kilograms | April 2003 |
| 161 | 1,703 Kilograms | February 17, 2003 |
| 162 | 1,500 Kilograms | January 15, 2003 |
| 163 | 999 Kilograms | January 6, 2003 |

Violations One Hundred Sixty-Four Through One Hundred Seventy-One
(Cocaine Distribution – Approximately 8,009 Kilograms of Cocaine)

7.       On or about the dates listed below, all dates being approximate and

inclusive, within the Districts listed below, the defendants JOAQUIN ARCHIVALDO

GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, did knowingly

and intentionally distribute and possess with intent to distribute a controlled substance, which

offenses involved a substance containing cocaine, a Schedule II controlled substance, in the

amounts listed below, contrary to Title 21, United States Code, Sections 841(a)(1) and

841(b)(1)(A)(ii)(II), and Title 18, United States Code, Section 2:

| VIOLATION NUMBER | JURISDICTION | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSES |
|---|---|---|---|
| 164 | District of Arizona | 30 Kilograms | September 27, 2013 |
| 165 | Middle District of Pennsylvania | 200 Kilograms | January 10, 2006 |
| 166 | District of New Jersey | 509 Kilograms | September 4, 2004 |
| 167 | Eastern District of New York | 2,000 Kilograms | January 28, 2003 |
| 168 | Northern District of Illinois | 1,733 Kilograms | August 16, 2002 |

14

| 169 | Eastern District of New York | 1,937 Kilograms | May 24, 2002 |
| 170 | Eastern District of New York | 500 Kilograms | November 14, 2000 |
| 171 | Western District of Texas | 1,100 Kilograms | September 15, 1999 |

Violation One Hundred Seventy-Two
(Heroin Distribution)

8.     On or about September 4, 2004, within the District of New Jersey, the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA

GARCIA, together with others, did knowingly and intentionally distribute and possess with

intent to distribute a controlled substance, which offense involved one kilogram or more of a

substance containing heroin, a Schedule I controlled substance, contrary to Title 21, United

States Code, Sections 841(a)(1) and 841(b)(1)(A)(i).

Violation One Hundred Seventy-Three
(International Methamphetamine Manufacture and Distribution)

9.     In or about and between January 2008 and September 2014, both dates

being approximate and inclusive, within the extraterritorial jurisdiction of the United States,

the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA

GARCIA, together with others, did knowingly and intentionally manufacture and distribute a

controlled substance, intending and knowing that such substance would be unlawfully

imported into the United States from a place outside thereof, which offense involved 500

grams or more of substance containing methamphetamine, a Schedule II controlled substance,

15

contrary to Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(H), and Title 18, United States Code, Section 2.

Violation One Hundred Seventy-Four
(International Marijuana Manufacture and Distribution)

10.     In or about and between January 2008 and September 2014, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, did knowingly and intentionally manufacture and distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved 1,000 kilograms or more of substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(G), and Title 18, United States Code, Section 2.

Violation One Hundred Seventy-Five
(Murder Conspiracy –
Informants and Cooperating Witnesses)

11.     In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally conspire to kill and

16

cause the intentional killing of one or more persons, to wit: individuals who agreed to become

informants or cooperating witnesses for law enforcement, and such killings did result, contrary

to Title 21, United States Code, Sections 848(e)(1)(A) and 846.

<u>Violation One Hundred Seventy-Six</u>
(Murder Conspiracy – Murder of Mexican Law Enforcement and
Military Personnel and Public Officials)

12.     In or about and between January 1989 and September 2014, both dates

being approximate and inclusive, within the extraterritorial jurisdiction of the United States,

the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA

GARCIA, together with others, while engaged in one or more offenses punishable under

Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes

charged in Counts Two through Four, did knowingly and intentionally conspire to kill and

cause the intentional killing of one or more persons, to wit: members of Mexican law

enforcement and military personnel and Mexican public officials, and such killings did result,

contrary to Title 21, United States Code, Sections 848(e)(1)(A) and 846.

<u>Violation One Hundred Seventy-Seven</u>
(Murder Conspiracy –
Members of the Beltran-Leyva Organization)

13.     In or about and between January 2008 and September 2014, both dates

being approximate and inclusive, within the extraterritorial jurisdiction of the United States,

the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA

GARCIA, together with others, while engaged in one or more offenses punishable under

Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes

17

charged in Counts Two through Four, did knowingly and intentionally conspire to kill and cause the intentional killing of one or more persons, to wit: members of the Beltran-Leyva drug trafficking organization, and such killings did result, contrary to Title 21, United States Code, Sections 848(e)(1)(A) and 846.

Violation One Hundred Seventy-Eight
(Murder Conspiracy –
Members of the Carillo-Fuentes Organization)

14.     In or about and between September 2004 and September 2014, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally conspire to kill and cause the intentional killing of one or more persons, to wit: members of the Carillo-Fuentes drug trafficking organization, and such killings did result, contrary to Title 21, United States Code, Sections 848(e)(1)(A) and 846.

Violation One Hundred Seventy-Nine
(Murder Conspiracy – Members of the Zetas Organization)

15.     In or about and between January 2001 and September 2014, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under

18

Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes

charged in Counts Two through Four, did knowingly and intentionally conspire to kill and

cause the intentional killing of one or more persons, to wit: members of Los Zetas drug

trafficking organization, and such killings did result, contrary to Title 21, United States Code,

Sections 848(e)(1)(A) and 846.

Violation One Hundred Eighty
(Murder Conspiracy –
Members of the Arellano-Felix Organization)

16.     In or about and between January 1990 and December 2011, both dates

being approximate and inclusive, within the extraterritorial jurisdiction of the United States,

the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA

GARCIA, together with others, while engaged in one or more offenses punishable under

Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes

charged in Counts Two through Four, did knowingly and intentionally conspire to kill and

cause the intentional killing of one or more persons, to wit: members of the Arellano-Felix

drug trafficking organization, and such killings did result, contrary to Title 21, United States

Code, Sections 848(e)(1)(A) and 846.

Violation One Hundred Eighty-One
(Attempted Murder of Arturo Beltran-Leyva)

17.     In or about October 2008, within the extraterritorial jurisdiction of the

United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL

ZAMBADA GARCIA, together with others, while engaged in one or more offenses

19

punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally attempt to kill and cause the intentional killing of Arturo Beltran-Leyva, in violation of Title 21, United States Code, Sections 848(e)(1)(A) and 846, and Title 18, United States Code, Section 2.

Violation One Hundred Eighty-Two<br>(Attempted Murder of John Doe #1)

18.    In or about October 2008, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally attempt to kill and cause the intentional killing of John Doe #1, an individual whose identity is known to the grand jury, in violation of Title 21, United States Code, Sections 848(e)(1)(A) and 846, and Title 18, United States Code, Section 2.

Violation One Hundred Eighty-Three<br>(Murder of Rafael Ramirez-Jaimes)

19.    In or about August 2008, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and

20

cause the intentional killing of Rafael Ramirez-Jaimes, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

Violation One Hundred Eighty-Four
(Murder of Raul LNU)

20.     In or about May 2008, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and cause the intentional killing of Raul LNU, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

Violation One Hundred Eighty-Five
(Murder of Secretaria de Seguridad Publica Officer
Roberto Velasco-Bravo)

21.     In or about April 2008, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and cause the intentional killing of Secretaria de Seguridad Publica Officer Roberto Velasco-

21

Bravo, a Mexican law enforcement agent, in violation of Title 21, United States Code, Section

848(e)(1)(A), and Title 18, United States Code, Section 2.

<u>Violation One Hundred Eighty-Six</u>
(Attempted Murder of John Doe #2)

22.     In or about and between June 2006 and December 2006, both dates being

approximate and inclusive, within the extraterritorial jurisdiction of the United States, the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA

GARCIA, together with others, while engaged in one or more offenses punishable under

Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes

charged in Counts Two through Four, did knowingly and intentionally attempt to kill and

cause the intentional killing of John Doe #2, an individual whose identity is known to the

grand jury, in violation of Title 21, United States Code, Sections 848(e)(1)(A) and 846, and

Title 18, United States Code, Section 2.

<u>Violation One Hundred Eighty-Seven</u>
(Murder of Julio Beltran)

23.     On or about July 13, 2005, within the extraterritorial jurisdiction of the

United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL

ZAMBADA GARCIA, together with others, while engaged in one or more offenses

punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to

wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and

cause the intentional killing of Julio Beltran, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

### Violation One Hundred Eighty-Eight
(Murder of John Doe #3)

24.    In or about and between January 2005 and June 2005, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and cause the intentional killing of John Doe #3, an individual whose identity is known to the grand jury, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

### Violation One Hundred Eighty-Nine
(Murder of John Doe #4)

25.    In or about and between January 2005 and June 2005, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and cause the intentional killing of John Doe #4, an individual whose identity is known to the grand jury, in violation of

23

Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

**Violation One Hundred Ninety**
(Murder of John Doe #5)

26.     In or about and between January 2005 and June 2005, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and cause the intentional killing of John Doe #5, an individual whose identity is known to the grand jury, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

**Violation One Hundred Ninety-One**
(Murder of John Doe #6)

27.     In or about and between January 2005 and June 2005, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and cause the intentional killing of John Doe #6, an individual whose identity is known to the grand jury, in

24

violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

Violation One Hundred Ninety-Two<br>(Murder of John Doe #7)

28.     In or about and between January 2005 and June 2005, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and cause the intentional killing of John Doe #7, an individual whose identity is known to the grand jury, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

Violation One Hundred Ninety-Three<br>(Murder of John Doe #8)

29.     In or about and between January 2005 and June 2005, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and cause the intentional killing of John Doe #8, an individual whose identity is known to the grand jury, in

violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

### Violation One Hundred Ninety-Four
(Murder of Rodolfo Carillo-Fuentes)

30. On or about September 11, 2004, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and cause the intentional killing of Rodolfo Carillo-Fuentes, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

### Violation One Hundred Ninety-Five
(Murder of FNU LNU, also known as "Robachivas")

31. In or about and between January 2000 and June 2000, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally kill and cause the

intentional killing of FNU LNU, also known as "Robachivas," in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

(Title 21, United States Code, Sections 848(a), 848(b) and 848(c); Title 18, United States Code, Sections 3238 and 3551 et seq.)

COUNT TWO
(International Cocaine, Heroin, Methamphetamine and
Marijuana Manufacture and Distribution Conspiracy)

32.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

33.     In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally conspire to manufacture and distribute one or more controlled substances, which offense involved: (a) a substance containing cocaine, a Schedule II controlled substance; (b) a substance containing heroin, a Schedule I controlled substance; (c) a substance containing methamphetamine, a Schedule II controlled substance; and (d) a substance containing marijuana, a Schedule I controlled substance, intending and knowing that such substances would be unlawfully imported into the United States from a place outside thereof, contrary to Title 21, United States Code, Section 959(a).  The amount of

27

cocaine involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was at least five kilograms or more of a substance containing cocaine. The amount of heroin involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was at least one kilogram or more of a substance containing heroin. The amount of methamphetamine involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was at least 500 grams or more of a mixture or substance containing methamphetamine. The amount of marijuana involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was at least one thousand kilograms of a substance containing marijuana.

(Title 21, United States Code, Sections 959(c), 960(a)(3), 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G), 960(b)(1)(H) and 963; Title 18, United States Code, Sections 3238 and 3551 et seq.)

## COUNT THREE
(Cocaine Importation Conspiracy)

34.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

35.     In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally conspire to import a controlled substance into the United States from a place outside thereof, which offense involved a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 952(a). The amount of cocaine involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was at least five kilograms or more of a substance containing cocaine.

(Title 21, United States Code, Sections 960(a)(1), 960(b)(1)(B)(ii) and 963; Title 18, United States Code, Sections 3551 et seq.)

COUNT FOUR
(Cocaine Distribution Conspiracy)

36. The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

37. In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo

29

Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together

with others, did knowingly and intentionally conspire to distribute and possess with intent to

distribute a controlled substance, which offense involved a substance containing cocaine, a

Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

The amount of cocaine involved in the conspiracy attributable to the defendants as a result of

their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was

at least five kilograms or more of a substance containing cocaine.

(Title 21, United States Code, Sections 846 and 841(b)(1)(A)(ii)(II); Title 18,

United States Code, Sections 3551 et seq.)

### COUNT FIVE
(International Distribution of Cocaine –
Approximately 3,082 Kilograms of Cocaine)

38.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

39.     In or about February 2014, within the extraterritorial jurisdiction of the

United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as

"El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa,"

"Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El

Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El

Senor," together with others, did knowingly and intentionally distribute a controlled substance,

intending and knowing that such substance would be unlawfully imported into the United

30

States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT SIX
(International Distribution of Cocaine –
Approximately 373 Kilograms of Cocaine)

40.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

41.     On or about January 15, 2014, within the extraterritorial jurisdiction of

the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known

as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana,"

"Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as

"El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo

El Senor," together with others, did knowingly and intentionally distribute a controlled

substance, intending and knowing that such substance would be unlawfully imported into the

United States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT SEVEN
(Cocaine Distribution –
Approximately 30 Kilograms of Cocaine)

42.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

43.     On or about September 27, 2013, within the District of Arizona, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(ii)(II); Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNT EIGHT
(International Distribution of Cocaine –
Approximately 434 Kilograms of Cocaine)

44.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

45.     On or about June 6, 2013, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa,"

"Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El

Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El

Senor," together with others, did knowingly and intentionally distribute a controlled substance,

intending and knowing that such substance would be unlawfully imported into the United

States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT NINE
(International Distribution of Cocaine –
Approximately 1,560 Kilograms of Cocaine)

46.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

47.     On or about May 2, 2010, within the extraterritorial jurisdiction of the

United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as

"El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa,"

"Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El

Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El

Senor," together with others, did knowingly and intentionally distribute a controlled substance,

intending and knowing that such substance would be unlawfully imported into the United

33

States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT TEN
(International Distribution of Cocaine –
Approximately 1,000 Kilograms of Cocaine)

48.    The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

49.    On or about October 7, 2009, within the extraterritorial jurisdiction of the

United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as

"El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa,"

"Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El

Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El

Senor," together with others, did knowingly and intentionally distribute a controlled substance,

intending and knowing that such substance would be unlawfully imported into the United

States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

34

## COUNT ELEVEN
(International Distribution of Cocaine –
Approximately 450 Kilograms of Cocaine)

50.    The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

51.    In or about December 2008, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT TWELVE
(International Distribution of Cocaine –
Approximately 640 Kilograms of Cocaine)

52.    The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

53.    On or about April 30, 2007, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as

35

"El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa,"

"Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El

Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El

Senor," together with others, did knowingly and intentionally distribute a controlled substance,

intending and knowing that such substance would be unlawfully imported into the United

States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT THIRTEEN
(International Distribution of Cocaine –
Approximately 400 Kilograms of Cocaine)

54.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

55.     On or about February 3, 2006, within the extraterritorial jurisdiction of

the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known

as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana,"

"Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as

"El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo

El Senor," together with others, did knowingly and intentionally distribute a controlled

substance, intending and knowing that such substance would be unlawfully imported into the

36

United States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT FOURTEEN
(International Distribution of Cocaine –
Approximately 3,200 Kilograms of Cocaine)

56.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

57.     In or about and between January 2005 and February 2005, both dates

being approximate and inclusive, within the extraterritorial jurisdiction of the United States,

the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo,"

"El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa,"

"Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo,"

"Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor,"

together with others, did knowingly and intentionally distribute a controlled substance,

intending and knowing that such substance would be unlawfully imported into the United

States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

37

## COUNT FIFTEEN
(International Distribution of Cocaine –
Approximately 12,000 Kilograms of Cocaine)

58.   The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

59.   In or about September 2004, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT SIXTEEN
(International Distribution of Cocaine –
Approximately 10,500 Kilograms of Cocaine)

60.   The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

61.   In or about September 2004, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as

"El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa,"

"Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El

Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El

Senor," together with others, did knowingly and intentionally distribute a controlled substance,

intending and knowing that such substance would be unlawfully imported into the United

States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

### COUNT SEVENTEEN
(International Distribution of Cocaine –
Approximately 6,000 Kilograms of Cocaine)

62.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

63.     In or about and between March 2004 and April 2004, both dates being

approximate and inclusive, within the extraterritorial jurisdiction of the United States, the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El

Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge"

and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo

Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together

with others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

39

outside thereof, which offense involved five kilograms or more of a substance containing

cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT EIGHTEEN
(International Distribution of Cocaine –
Approximately 1,999 Kilograms of Cocaine)

64.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

65.     On or about January 25, 2004, within the extraterritorial jurisdiction of

the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known

as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana,"

"Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as

"El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo

El Senor," together with others, did knowingly and intentionally distribute a controlled

substance, intending and knowing that such substance would be unlawfully imported into the

United States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT NINETEEN
(International Distribution of Cocaine –
Approximately 1,500 Kilograms of Cocaine)

66.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

67.     In or about April 2003, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT TWENTY
(Use of Firearms)

68.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

69.     In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

41

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El

Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge"

and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo

Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together

with others, did knowingly and intentionally use and carry one or more firearms during and in

relation to one or more drug trafficking crimes, to wit: the crimes charged in Counts One

through Nineteen, and did knowingly and intentionally possess such firearms in furtherance of

said drug trafficking crimes, one or more of which firearms was brandished and discharged

and one or more of which firearms was a machinegun.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii),

924(c)(1)(A)(iii), 924(c)(1)(B)(ii), 2 and 3551 et seq.)

## COUNT TWENTY-ONE
(Conspiracy to Launder Narcotics Proceeds)

70.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

71.     In or about and between January 1989 and September 2014, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El

Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge"

and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo

Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together

with others, did knowingly and intentionally conspire to: (i) conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: narcotics trafficking, contrary to Title 21, United States Code, Sections 841(a)(1), 846, 848, 952(a), 959 and 963, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the funds represented the proceeds of some form of unlawful activity and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and (ii) transport, transmit and transfer monetary instruments and funds from a place in the United States to and through one or more places outside the United States, to wit: Mexico and Colombia, (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(2)(A), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(ii).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

43

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT ONE
(Continuing Criminal Enterprise)

72.     The United States hereby gives notice to the defendants that, upon

conviction of the offense charged in Count One, the government will seek forfeiture in

accordance with Title 21, United States Code, Section 853(a), which requires any person

convicted of such offense to forfeit any property constituting, or derived from, proceeds

obtained, directly or indirectly, and any property used, or intended to be used, in any manner or

part, to commit, or to facilitate the commission of, such offense, and any of their interest in,

claims against, and property or contractual rights affording a source of control over, the

continuing criminal enterprise, including but not limited to at least approximately a sum of

money equal to $14 billion in United States currency.

73.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

          (a)     cannot be located upon the exercise of due diligence;

          (b)     has been transferred or sold to, or deposited   with, a third party;

          (c)     has been placed beyond the jurisdiction of the court;

          (d)     has been substantially diminished in value; or

          (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the forfeitable

44

property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS TWO THROUGH NINETEEN
(Cocaine, Heroin, Methamphetamine and/or Marijuana Trafficking)

74.     The United States hereby gives notice to the defendants that, upon

conviction of any of the offenses charged in Counts Two through Nineteen, the government

will seek forfeiture in accordance with Title 21, United States Code, Section 853, which

requires any person convicted of such offenses to forfeit any property constituting, or derived

from, proceeds obtained, directly or indirectly, and any property used, or intended to be used,

in any manner or part, to commit, or to facilitate the commission of, such offenses including

but not limited to at least approximately a sum of $14 billion in United States currency.

75.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited   with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the forfeitable

45

property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWENTY<br>(Use of Firearms in Furtherance of Drug Trafficking)

76.     The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Twenty, the government will seek forfeiture in accordance with Title 21, United States Code, Section 924(d), which requires any person convicted of such offense to forfeit any firearm or ammunition involved in or used in any knowing violation of such offense.

77.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(p) and 924(d))

46

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT TWENTY-ONE
(Money Laundering)

78.    The United States hereby gives notice to the defendants that, upon

conviction of the offense charged in Count Twenty-One, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 982, of all property involved in such

offense, and all property traceable to such property, including but not limited to at least

approximately a sum of $14 billion in United States currency.

79.    If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited   with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982, to

47

seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 18, United States Code, Section 982)

A TRUE BILL

/FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

ARTHUR G. WYATT, CHIEF
NARCOTICS & DANGEROUS DRUG
SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

48

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK
### CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA
*vs.*
*JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA,*

Defendants.

# INDICTMENT

( T. 21, U.S.C., §§ 841(a)(1), 841(b)(1)(A)(i), 841(b)(1)(A)(ii)(II), 846, 848(a), 848(b), 848(c), 853(a), 853(p), 959(a), 959(c), 960(a)(1), 960(a)(3), 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G), 960(b)(1)(H) and 963; T. 18, U.S.C., §§ 2, 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(c)(1)(B)(ii), 924(d), 1956(h), 3238 and 3551 et seq.)

*A true bill.*

_____
Foreperson

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

***Kenji M. Price, Assistant U.S. Attorney (718) 254-6059***