GMP:MPR/PEN
F.# 2009R01065/OCDETF# NY-NYE-616

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     – against –

JOAQUIN ARCHIVALDO GUZMAN LOERA,
     also known as "El Chapo," "El
     Rapido," "Chapo Guzman,"
     "Shorty," "El Senor," "El
     Jefe," "Nana," "Apa," "Papa,"
     "Inge" and "El Viejo," and
ISMAEL ZAMBADA GARCIA,
     also known as "El Mayo," "Mayo
     Zambada," "Doctor," "La Doc,"
     "Doctora," "El Lic," "Mike"
     and "Mayo El Senor,"

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**SUPERSEDING
INDICTMENT**

Cr. No. 09-466(SLT)(S-3)
(T. 21, U.S.C., §§ 841(a)(1),
841(b)(1)(A)(ii)(II), 846,
848(a), 848(b), 848(c),
853(a), 853(p), 959(a),
959(c), 960(a)(1), 960(a)(3),
960(b)(1)(A), 960(b)(1)(B)(ii),
960(b)(1)(G), 960(b)(1)(H),
and 963; T. 18, U.S.C., §§ 2,
924(c)(1)(A)(i), 924(c)(1)(A)(ii),
924(c)(1)(A)(iii), 924(c)(1)(B)(ii),
924(d), 982, 1956(h), 3238 and 3551
et seq.)

THE GRAND JURY CHARGES:

## INTRODUCTION

     At all times relevant to this Superseding Indictment, unless otherwise indicated:

     1.     Since the late 1980s, the Mexican Federation, also known as the

"Federation," "La Federacion," the "Sinaloa Cartel" and the "Alliance," existed as an

organized crime syndicate founded upon longstanding relationships between Mexico's major

drug trafficking kingpins.  The Federation functioned as a council with representatives from

the respective drug trafficking organizations of its principal leaders, the defendants JOAQUIN

ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo

Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and

ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La

Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," and others.  In the early 2000s,

conflicts developed between drug trafficking kingpins within the Federation and the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA

GARCIA.  A series of internal wars occurred, and the Federation dissolved.  The defendants'

faction of the Federation became known as the Sinaloa Cartel, which was the largest drug

trafficking organization in the world.  The vast majority of drugs trafficked by the Sinaloa

Cartel were imported into United States, where the drugs were consumed.  The Sinaloa

Cartel's drug sales in the United States generated billions of dollars in profit.  The drug

proceeds were then laundered back to Mexico; often the drug money was physically

transported from the United States to Mexico in vehicles containing hidden compartments and

through other clandestine means.

        2.      The Sinaloa Cartel operated through cooperative arrangements and close

coordination with South American cocaine sources of supply.  Through a network of corrupt

police and political contacts, the Federation directed a large scale narcotics transportation

network involving the use of land, air and sea transportation assets, shipping multi-ton

quantities of cocaine from South America, through Central America and Mexico, and finally

into the United States.  In addition, the Sinaloa Cartel manufactured and imported multi-ton

quantities of heroin, methamphetamine and marijuana into the United States.  While at times there have been rifts and infighting among the leaders of the Sinaloa Cartel, they generally coordinated their criminal activities, shared and controlled Mexico's trafficking routes, resolved conflicts over territory, minimized inter-organization violence and ensured their common political and judicial protection.

        3.      The defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA also employed "sicarios," or hitmen, who carried out hundreds of acts of violence, including murders, assaults, kidnappings, assassinations and acts of torture at the direction of the defendants.  The defendants directed and ordered these acts of violence for a variety of reasons, including but not limited to:

        (a)      Promoting and enhancing the prestige, reputation and position of the Sinaloa Cartel with respect to rival criminal organizations;

        (b)      Preserving and protecting the power, territory and criminal ventures of the Sinaloa Cartel, including but not limited to the Sinaloa Cartel's control over drug trafficking routes over the U.S.-Mexico border;

        (c)      Dissuading Mexican law enforcement officers, members of the Mexican military and other public officials in Mexico from enforcing Mexican drug laws and disrupting the Sinaloa Cartel's activities;

        (d)      Enforcing discipline amongst its members and associates by punishing disloyalty and failure; and

(e)     Protecting members of the Sinaloa Cartel from arrest and prosecution by silencing potential witnesses and retaliating against anyone who provided information or assistance to law enforcement authorities.

COUNT ONE
(Continuing Criminal Enterprise)

4.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

5.     In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally engage in a continuing criminal enterprise, in that the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA committed violations of Title 21, United States Code, Sections 841(a), 846, 848(e), 952(a), 959(a), 960(a) and 963, including Violations One through Eighty-Four set forth below, which violations were part of a continuing series of violations of those statutes undertaken by the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, in concert with five or more other persons, with respect to whom the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA

4

occupied supervisory and management positions, and were each one of several principal administrators, organizers and leaders of the continuing criminal enterprise, and from which continuing series of violations the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA obtained substantial income and resources, and which enterprise received in excess of $10 million in gross receipts during one or more twelve-month periods for the manufacture, importation and distribution of cocaine. The violations involved at least 300 times the quantity of a substance described in Section 841(b)(1)(B) of Title 21, United States Code, to wit: 150 kilograms or more of a substance containing cocaine. The continuing series of violations, as defined by Title 21, United States Code, Section 848(c), includes the following violations set forth below:

Violations One Through Twelve
(International Cocaine Distribution with the Norte del Valle Cartel)

6.     On or about the dates listed below, all dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offenses involved a substance containing cocaine, a Schedule II controlled substance, in the amounts listed below, contrary to Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code, Section 2:

5

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 1 | 3,000 Kilograms | December 2006 – January 2007 |
| 2 | 3,200 Kilograms | January 2005 |
| 3 | 12,000 Kilograms | August 2004 – September 2004 |
| 4 | 10,500 Kilograms | August 2004 – September 2004 |
| 5 | 10,000 Kilograms | July 2004 |
| 6 | 10,000 Kilograms | May 2004 – June 2004 |
| 7 | 800 Kilograms | April 2004 |
| 8 | 10,000 Kilograms | March 2004 – April 2004 |
| 9 | 8,000 Kilograms | January 2004 – March 2004 |
| 10 | 6,465 Kilograms | January 2004 |
| 11 | 6,000 Kilograms | November 2003 – December 2003 |
| 12 | 3,600 Kilograms | August 2003 – September 2003 |

<u>Violations Thirteen Through Sixty-Nine</u>
(International Cocaine Distribution with the Don Lucho Organization)

7.    On or about the dates listed below, all dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offenses involved a substance containing cocaine, a Schedule II

controlled substance, in the amounts listed below, contrary to Title 21, United States Code,

Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code,

Section 2:

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 13 | 1,302 Kilograms | May 2, 2010 |
| 14 | 5,000 Kilograms | December 29, 2008 |
| 15 | 3,900 Kilograms | July 15, 2008 |
| 16 | 3,600 Kilograms | May 10, 2008 |
| 17 | 2,132 Kilograms | November 11, 2007 |
| 18 | 4,336 Kilograms | April 15, 2007 |
| 19 | 1,870 Kilograms | January 15, 2007 |
| 20 | 3,000 Kilograms | November 12, 2006 |
| 21 | 1,420 Kilograms | November 12, 2006 |
| 22 | 2,100 Kilograms | November 10, 2006 |
| 23 | 6,000 Kilograms | September 23, 2006 |
| 24 | 3,000 Kilograms | September 19, 2006 |
| 25 | 4,140 Kilograms | August 28, 2006 |
| 26 | 2,463 Kilograms | July 8, 2006 |
| 27 | 1,465 Kilograms | May 21, 2006 |

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 28 | 2,800 Kilograms | May 7, 2006 |
| 29 | 3,048 Kilograms | April 9, 2006 |
| 30 | 2,100 Kilograms | April 4, 2006 |
| 31 | 818 Kilograms | April 4, 2006 |
| 32 | 2,800 Kilograms | February 7, 2006 |
| 33 | 4,467 Kilograms | January 13, 2006 |
| 34 | 1,567 Kilograms | January 11, 2006 |
| 35 | 811 Kilograms | November 30, 2005 |
| 36 | 2,000 Kilograms | August 26, 2005 |
| 37 | 2,040 Kilograms | August 23, 2005 |
| 38 | 1,902 Kilograms | July 28, 2005 |
| 39 | 1,300 Kilograms | July 27, 2005 |
| 40 | 3,971 Kilograms | July 23, 2005 |
| 41 | 1,700 Kilograms | July 11, 2005 |
| 42 | 1,100 Kilograms | July 9, 2005 |
| 43 | 3,120 Kilograms | July 8, 2005 |
| 44 | 4,000 Kilograms | July 6, 2005 |
| 45 | 1,500 Kilograms | June 10, 2005 |
| 46 | 1,811 Kilograms | June 2, 2005 |

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 47 | 2,500 Kilograms | May 24, 2005 |
| 48 | 4,127 Kilograms | April 4, 2005 |
| 49 | 2,000 Kilograms | March 16, 2005 |
| 50 | 3,980 Kilograms | March 11, 2005 |
| 51 | 2,000 Kilograms | February 12, 2005 |
| 52 | 1,850 Kilograms | December 22, 2004 |
| 53 | 1,589 Kilograms | December 20, 2004 |
| 54 | 1,850 Kilograms | November 11, 2004 |
| 55 | 1,830 Kilograms | September 13, 2004 |
| 56 | 1,888 Kilograms | July 29, 2004 |
| 57 | 1,800 Kilograms | December 7, 2003 |
| 58 | 234 Kilograms | October 4, 2003 |
| 59 | 265 Kilograms | August 13, 2003 |
| 60 | 700 Kilograms | July 26, 2003 |
| 61 | 300 Kilograms | June 26, 2003 |
| 62 | 288 Kilograms | June 19, 2003 |
| 63 | 300 Kilograms | June 10, 2003 |
| 64 | 300 Kilograms | May 31, 2003 |
| 65 | 1,817 Kilograms | May 31, 2003 |

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 66 | 2,200 Kilograms | May 14, 2003 |
| 67 | 415 Kilograms | April 21, 2003 |
| 68 | 460 Kilograms | April 7, 2003 |
| 69 | 1,500 Kilograms | January 15, 2003 |

<u>Violations Seventy Through Seventy-Two</u>
(International Cocaine Distribution with the Cifuentes-Villa Organization)

8.     On or about the dates listed below, all dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offenses involved a substance containing cocaine, a Schedule II controlled substance, in the amounts listed below, contrary to Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code, Section 2:

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 70 | 450 Kilograms | December 2008 |
| 71 | 400 Kilograms | February 3, 2006 |
| 72 | 2,000 Kilograms | January 25, 2004 |

<u>Violations Seventy-Three Through Seventy-Eight</u>
(International Cocaine Distribution with Other South American Suppliers)

      9.     On or about the dates listed below, all dates being approximate and

inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN

ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offenses involved a substance containing cocaine, a Schedule II

controlled substance, in the amounts listed below, contrary to Title 21, United States Code,

Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code,

Section 2:

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 73 | 373 Kilograms | January 15, 2014 |
| 74 | 456 Kilograms | June 6, 2013 |
| 75 | 1,000 Kilograms | October 7, 2009 |
| 76 | 4,716 Kilograms | September 13, 2008 |
| 77 | 5,000 Kilograms | September 9, 2008 – September 12, 2008 |
| 78 | 19,000 Kilograms | March 18, 2007 |

<u>Violations Seventy-Nine Through Eighty-Four</u>
(Cocaine and Heroin Distribution)

10.     On or about the dates listed below, all dates being approximate and inclusive, within the Districts listed below, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA and ISMAEL ZAMBADA GARCIA, together with others, did knowingly and intentionally distribute and possess with intent to distribute one or more controlled substances, which offenses involved (i) a substance containing cocaine, a Schedule II controlled substance, and (ii) a substance containing heroin, a Schedule I controlled substance, in the amounts listed below, contrary to Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i), 841(b)(1)(A)(ii)(II), and Title 18, United States Code, Section 2:

| VIOLATION NUMBER | JURISDICTION | APPROXIMATE AMOUNT OF CONTROLLED SUBSTANCES | DATE(S) OF OFFENSES |
|---|---|---|---|
| 79 | District of Arizona | 25 Kilograms of cocaine | September 27, 2013 |
| 80 | District of New Jersey | 511 Kilograms of cocaine; and 3 Kilograms of heroin | September 4, 2004 |
| 81 | Eastern District of New York | 1,997 Kilograms of cocaine | January 28, 2003 |
| 82 | Northern District of Illinois | 1,925 Kilograms of cocaine | August 16, 2002 |
| 83 | Eastern District of New York | 1,923 Kilograms of cocaine | May 24, 2002 |
| 84 | Western District of Texas | 1,100 Kilograms of cocaine | September 15, 1999 |

(Title 21, United States Code, Sections 848(a), 848(b), 848(c); Title 18, United States Code, Sections 3238 and 3551 <u>et.</u> <u>seq.</u>)

12

## COUNT TWO
(International Cocaine, Heroin, Methamphetamine and
Marijuana Manufacture and Distribution Conspiracy)

11.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

12.     In or about and between January 1989 and September 2014, both dates

being approximate and inclusive, within the extraterritorial jurisdiction of the United States,

the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo,"

"El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa,"

"Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo,"

"Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor,"

together with others, did knowingly and intentionally conspire to manufacture and distribute

one or more controlled substances, which offense involved: (a) a substance containing cocaine,

a Schedule II controlled substance; (b) a substance containing heroin, a Schedule I controlled

substance; (c) a substance containing methamphetamine, a Schedule II controlled substance;

and (d) a substance containing marijuana, a Schedule I controlled substance, intending and

knowing that such substances would be unlawfully imported into the United States from a

place outside thereof, contrary to Title 21, United States Code, Section 959(a).  The amount of

cocaine involved in the conspiracy attributable to the defendants as a result of their own

conduct, and the conduct of other conspirators reasonably foreseeable to them, was at least five

kilograms or more of a substance containing cocaine.  The amount of heroin involved in the

conspiracy attributable to the defendants as a result of their own conduct, and the conduct of

other conspirators reasonably foreseeable to them, was at least one kilogram or more of a substance containing heroin. The amount of methamphetamine involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was at least 500 grams or more of a mixture or substance containing methamphetamine. The amount of marijuana involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was at least one thousand kilograms of a substance containing marijuana.

(Title 21, United States Code, Sections 959(c), 960(a)(3), 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G), 960(b)(1)(H) and 963; Title 18, United States Code, Sections 3238 and 3551 et seq.)

<u>COUNT THREE</u>
(Cocaine Importation Conspiracy)

13.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

14.     In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together

14

with others, did knowingly and intentionally conspire to import a controlled substance into the

United States from a place outside thereof, which offense involved a substance containing

cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section

952(a). The amount of cocaine involved in the conspiracy attributable to the defendants as a

result of their own conduct, and the conduct of other conspirators reasonably foreseeable to

them, was at least five kilograms or more of a substance containing cocaine.

(Title 21, United States Code, Sections 960(a)(1), 960(b)(1)(B)(ii) and 963; Title

18, United States Code, Sections 3551 et seq.)

COUNT FOUR
(Cocaine Distribution Conspiracy)

15.      The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

16.      In or about and between January 1989 and September 2014, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El

Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge"

and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo

Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together

with others, did knowingly and intentionally conspire to distribute and possess with intent to

distribute a controlled substance, which offense involved a substance containing cocaine, a

15

Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1). The amount of cocaine involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was at least five kilograms or more of a substance containing cocaine.

(Title 21, United States Code, Sections 846 and 841(b)(1)(A)(ii)(II); Title 18, United States Code, Sections 3551 et seq.)

COUNT FIVE
(International Distribution of Cocaine –
Approximately 373 Kilograms of Cocaine)

17.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

18.     On or about January 15, 2014, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

16

## COUNT SIX
(Cocaine Distribution –
Approximately 25 Kilograms of Cocaine)

19.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

20.     On or about September 27, 2013, within the District of Arizona, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(ii)(II); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT SEVEN
(International Distribution of Cocaine –
Approximately 456 Kilograms of Cocaine)

21.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

22.     On or about June 6, 2013, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa,"

17

"Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT EIGHT
(International Distribution of Cocaine –
Approximately 1,302 Kilograms of Cocaine)

23.    The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

24.    On or about May 2, 2010, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United

States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT NINE
(International Distribution of Cocaine –
Approximately 1,000 Kilograms of Cocaine)

25.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

26.     On or about October 7, 2009, within the extraterritorial jurisdiction of the

United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as

"El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa,"

"Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El

Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El

Senor," together with others, did knowingly and intentionally distribute a controlled substance,

intending and knowing that such substance would be unlawfully imported into the United

States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

19

COUNT TEN
(International Distribution of Cocaine –
Approximately 450 Kilograms of Cocaine)

27.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

28.     In or about December 2008, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT ELEVEN
(International Distribution of Cocaine –
Approximately 400 Kilograms of Cocaine)

29.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

30.     On or about February 3, 2006, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known

20

as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

### COUNT TWELVE
(International Distribution of Cocaine –
Approximately 12,000 Kilograms of Cocaine)

31.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

32.     In or about September 2004, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United

21

States from a place outside thereof, which offense involved five kilograms or more of a

substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT THIRTEEN
(International Distribution of Cocaine –
Approximately 10,500 Kilograms of Cocaine)

33.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

34.     In or about August 2004 and September 2004, within the extraterritorial

jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN

LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor,"

"El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA

GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El

Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally

distribute a controlled substance, intending and knowing that such substance would be

unlawfully imported into the United States from a place outside thereof, which offense

involved five kilograms or more of a substance containing cocaine, a Schedule II controlled

substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

22

COUNT FOURTEEN
(International Distribution of Cocaine –
Approximately 8,000 Kilograms of Cocaine)

35.      The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

36.      In or about and between January 2004 and March 2004, both dates being

approximate and inclusive, within the extraterritorial jurisdiction of the United States, the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El

Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge"

and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo

Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together

with others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved five kilograms or more of a substance containing

cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT FIFTEEN
(International Distribution of Cocaine –
Approximately 2,000 Kilograms of Cocaine)

37.      The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

38.     On or about January 25, 2004, within the extraterritorial jurisdiction of the United States, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT SIXTEEN
(Use of Firearms)

39.     The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

40.     In or about and between January 1989 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge" and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together

24

with others, did knowingly and intentionally use and carry one or more firearms during and in

relation to one or more drug trafficking crimes, to wit: the crimes charged in Counts One

through Fifteen, and did knowingly and intentionally possess such firearms in furtherance of

said drug trafficking crimes, one or more of which firearms was brandished and discharged

and one or more of which firearms was a machinegun.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii),

924(c)(1)(A)(iii), 924(c)(1)(B)(ii), 2 and 3551 et seq.)

## COUNT SEVENTEEN
(Conspiracy to Launder Narcotics Proceeds)

41.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

42.     In or about and between January 1989 and September 2014, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants JOAQUIN ARCHIVALDO GUZMAN LOERA, also known as "El Chapo," "El

Rapido," "Chapo Guzman," "Shorty," "El Senor," "El Jefe," "Nana," "Apa," "Papa," "Inge"

and "El Viejo," and ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo

Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together

with others, did knowingly and intentionally conspire to: (i) conduct one or more financial

transactions in and affecting interstate and foreign commerce, to wit: the transfer and delivery

of United States currency, which transactions in fact involved the proceeds of specified

unlawful activity, to wit: narcotics trafficking, contrary to Title 21, United States Code,

Sections 841(a)(1), 846, 848, 952(a), 959 and 963, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the funds represented the proceeds of some form of unlawful activity and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and to avoid one or more transaction reporting requirements, contrary to Title 18, United States Code, Section 1956(a)(1)(B); and (ii) transport, transmit and transfer monetary instruments and funds from a place in the United States to and through one or more places outside the United States, to wit: Mexico and Colombia, (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(2)(A), and (b) knowing that the funds represented the proceeds of some form of unlawful activity and knowing that the transportation, transmission and transfer were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and to avoid one or more transaction reporting requirements, contrary to Title 18, United States Code, Section 1956(a)(2)(B).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT ONE
(Continuing Criminal Enterprise)

43.    The United States hereby gives notice to the defendants that, upon conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), which requires any person convicted of such offense to forfeit any property constituting, or derived from, proceeds obtained, directly or indirectly, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense, and any of their interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise, including but not limited to at least approximately a sum of money equal to $14 billion in United States currency.

44.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

27

seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS TWO THROUGH FIFTEEN
(Cocaine, Heroin, Methamphetamine and/or Marijuana Trafficking)

45.     The United States hereby gives notice to the defendants that, upon conviction of any of the offenses charged in Counts Two through Fifteen, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853, which requires any person convicted of such offenses to forfeit any property constituting, or derived from, proceeds obtained, directly or indirectly, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses including but not limited to at least approximately a sum of $14 billion in United States currency.

46.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

28

seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

CRIMINAL FORFEITURE ALLEGATION AS TO COUNT SIXTEEN
(Use of Firearms in Furtherance of Drug Trafficking)

47.     The United States hereby gives notice to the defendants that, upon their

conviction of the offense charged in Count Sixteen, the government will seek forfeiture in

accordance with Title 21, United States Code, Section 924(d), which requires any person

convicted of such offense to forfeit any firearm or ammunition involved in or used in any

knowing violation of such offense.

48.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the court;

      (d)     has been substantially diminished in value; or

      (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

29

seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(p) and 924(d))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT SEVENTEEN
(Money Laundering)

49.     The United States hereby gives notice to the defendants that, upon

conviction of the offense charged in Count Seventeen, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 982, of all property involved in such

offense, and all property traceable to such property, including but not limited to at least

approximately a sum of $14 billion in United States currency.

50.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982, to

30

seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982)


A TRUE BILL


_____
FOREPERSON


_____
ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

_____
ARTHUR G. WYATT, CHIEF
NARCOTIC & DANGEROUS DRUG
SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE


OF COUNSEL:

WIFREDO A. FERRER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA


31

F. #2009R01065/OCDETF# NY-NYE-616

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*JOAQUIN ARCHIVALDO GUZMAN LOERA, ET AL.,*

Defendant.

# SUPERSEDING INDICTMENT

(T. 21, U.S.C., §§ 841(a)(1), 841(b)(1)(A)(ii)(II), 846, 848(a), 848(b), 848(c), 853(a), 853(p), 959(a), 959(c), 960(a)(1), 960(a)(3), 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G), 960(b)(1)(H), and 963; T. 18, U.S.C., §§ 2, 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(c)(1)(B)(ii), 924(d), 982, 1956(h), 3238 and 3551 et seq.)

*A true bill.*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*

*of* _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _

*Michael P. Robotti, Assistant U.S. Attorney (718) 254-7576*