FJN:RMP
F.# 2009R01065/OCDETF# NY-NYE-616

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| UNITED STATES OF AMERICA | **S U P E R S E D I N G** <br> **I N D I C T M E N T** |
|    – against – | Cr. No. <u>09-466 (BMC) (S-5)</u> |
| ISMAEL ZAMBADA GARCIA, <br>    also known as "El Mayo," "Mayo <br>    Zambada," "Doctor," "La Doc," <br>    "Doctora," "El Lic," "Mike" <br>    and "Mayo El Senor," | (T. 21, U.S.C., §§ 841(b)(1)(A)(ii)(II), <br> 846, 848(a), 848(b), 848(c), <br> 853(a), 853(p), 959(a), <br> 959(c), 960(a)(3), <br> 960(b)(1)(A), 960(b)(1)(B)(ii), <br> 960(b)(1)(F), 960(b)(1)(G), 960(b)(1)(H), <br> and 963; T. 18, U.S.C., §§ 2, <br> 924(c)(1)(A)(i), 924(c)(1)(A)(ii), <br> 924(c)(1)(A)(iii), 924(c)(1)(B)(ii), <br> 924(d), 982, 1956(h), 3238 and 3551 <br> <u>et seq.</u>) |
|               Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

At all times relevant to this Superseding Indictment, unless otherwise indicated:

1.      Since the late 1980s, the Mexican Federation (the "Federation") existed as an organized crime syndicate founded upon longstanding relationships between Mexico's major drug trafficking kingpins. The Federation functioned as a council with representatives from the respective drug trafficking organizations of its principal leaders, including the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," and others. During the late 1980s and 1990s, the members of the Federation were hired by Colombian sources of supply to transport drugs through Mexico and into United States.

2.     In the early 2000s, ISMAEL ZAMBADA GARCIA and Joaquin Archivaldo Guzman Loera, also known as "El Chapo," formed a partnership that led to the transformation of the Federation into the Sinaloa Cartel, which became the largest drug trafficking organization in the world. The Sinaloa Cartel had a structure that included thousands of members, including: (a) the leadership of the Sinaloa Cartel, who were the ultimate decision makers in the organization with respect to its drug trafficking and money laundering activities, as well as its corruption and enforcement activities undertaken to preserve and protect its illegal activities; (b) security personnel, who protected the leadership of the Sinaloa Cartel and engaged in violent acts to further the goals of the organization; (c) plaza bosses, who controlled certain territories for the Sinaloa Cartel and were responsible for transporting drugs through those territories; (d) transporters, such as boat and submarine crews, pilots and truck drivers, who transported drugs from Colombia through Mexico and into the United States; and (e) money launderers, who funneled drug proceeds from the United States back to Mexico. While at times there have been rifts and infighting among the leaders of the Sinaloa Cartel, they generally coordinated their criminal activities, shared and controlled Mexico's trafficking routes, resolved conflicts over territory, minimized inter-organization violence and ensured the Sinaloa Cartel received official or non-official protection.

3.     The Sinaloa Cartel operated through cooperative arrangements and close coordination with South American cocaine sources of supply. The defendant ISMAEL ZAMBADA GARCIA and other leaders of the Sinaloa Cartel directed a large-scale narcotics transportation network involving the use of land, air and sea transportation assets, shipping multi-ton quantities of cocaine from South America, through Central America and Mexico, and finally into the United States. In addition, the Sinaloa Cartel manufactured and imported multi-

ton quantities of heroin, methamphetamine and marijuana into the United States. The vast majority of drugs trafficked by the Sinaloa Cartel were imported into United States, where the drugs were consumed. The Sinaloa Cartel used corruption as a means and method of achieving the goals of its drug trafficking enterprise.

4. The Sinaloa Cartel's drug sales in the United States generated billions of dollars in profit. The drug proceeds were then laundered back to Mexico; often the drug money was physically transported from the United States to Mexico in vehicles containing hidden compartments and through other clandestine means.

5. The defendant ISMAEL ZAMBADA GARCIA and other leaders of the Sinaloa Cartel also employed "sicarios," or hitmen, who carried out hundreds of acts of violence, including murders, assaults, kidnappings, assassinations and acts of torture at the direction of the defendant. The defendant directed and ordered these acts of violence for a variety of reasons, including but not limited to:

(a) promoting and enhancing the prestige, reputation and position of the Sinaloa Cartel with respect to rival criminal organizations;

(b) preserving and protecting the power, territory and criminal ventures of the Sinaloa Cartel, including but not limited to the Sinaloa Cartel's control over drug trafficking routes over the U.S.-Mexico border;

(c) enforcing discipline amongst its members and associates by punishing disloyalty and failure; and

(d) protecting members of the Sinaloa Cartel from arrest and prosecution by silencing potential witnesses and retaliating against anyone who provided information or assistance to law enforcement authorities.

<u>COUNT ONE</u>
(Continuing Criminal Enterprise)

6.    The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

7.    In or about and between January 1989 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally engage in a continuing criminal enterprise, in that the defendant ISMAEL ZAMBADA GARCIA committed violations of Title 21, United States Code, Sections 841(a), 846, 959(a) and 960(a), including Violations One through Eighty-Five set forth below, which violations were part of a continuing series of violations of those statutes undertaken by the defendant ISMAEL ZAMBADA GARCIA, in concert with five or more other persons, with respect to whom the defendant ISMAEL ZAMBADA GARCIA occupied supervisory and management positions, and was one of several principal administrators, organizers and leaders of the continuing criminal enterprise, and from which continuing series of violations the defendant ISMAEL ZAMBADA GARCIA obtained substantial income and resources, and which enterprise received in excess of $10 million in gross receipts during one or more twelve-month periods for the manufacture, importation and distribution of cocaine. The violations involved at least 300 times the quantity of a substance described in Section 841(b)(1)(B) of Title 21, United States Code, to wit: 150 kilograms or more of a substance containing cocaine. The continuing series of violations, as defined by Title 21, United States Code, Section 848(c), includes the following violations set forth below:

Violations One Through Twelve
(International Cocaine Distribution with the Norte del Valle Cartel)

8.    On or about the dates listed below, all dates being approximate and inclusive, the defendant ISMAEL ZAMBADA GARCIA, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offenses involved a substance containing cocaine, a Schedule II controlled substance, in the amounts listed below, in violation of Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code, Section 2:

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 1 | 3,000 Kilograms | December 2006 – January 2007 |
| 2 | 3,200 Kilograms | January 2005 |
| 3 | 12,000 Kilograms | August 2004 – September 2004 |
| 4 | 10,500 Kilograms | August 2004 – September 2004 |
| 5 | 10,000 Kilograms | July 2004 |
| 6 | 10,000 Kilograms | May 2004 – June 2004 |
| 7 | 800 Kilograms | April 2004 |
| 8 | 10,000 Kilograms | March 2004 – April 2004 |
| 9 | 8,000 Kilograms | January 2004 – March 2004 |
| 10 | 6,465 Kilograms | January 2004 |
| 11 | 6,000 Kilograms | November 2003 – December 2003 |
| 12 | 3,600 Kilograms | August 2003 – September 2003 |

Violations Thirteen Through Sixty-Nine
(International Cocaine Distribution with the Don Lucho Organization)

9.　　On or about the dates listed below, all dates being approximate and inclusive, the defendant ISMAEL ZAMBADA GARCIA, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offenses involved a substance containing cocaine, a Schedule II controlled substance, in the amounts listed below, in violation of Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code, Section 2:

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
| --- | --- | --- |
| 13 | 1,302 Kilograms | May 2, 2010 |
| 14 | 5,000 Kilograms | December 29, 2008 |
| 15 | 3,900 Kilograms | July 15, 2008 |
| 16 | 3,600 Kilograms | May 10, 2008 |
| 17 | 2,132 Kilograms | November 11, 2007 |
| 18 | 4,336 Kilograms | April 15, 2007 |
| 19 | 1,870 Kilograms | January 15, 2007 |
| 20 | 3,000 Kilograms | November 12, 2006 |
| 21 | 1,420 Kilograms | November 12, 2006 |
| 22 | 2,100 Kilograms | November 10, 2006 |
| 23 | 6,000 Kilograms | September 23, 2006 |
| 24 | 3,000 Kilograms | September 19, 2006 |
| 25 | 4,140 Kilograms | August 28, 2006 |

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 26 | 2,463 Kilograms | July 8, 2006 |
| 27 | 1,465 Kilograms | May 21, 2006 |
| 28 | 2,800 Kilograms | May 7, 2006 |
| 29 | 3,048 Kilograms | April 9, 2006 |
| 30 | 2,100 Kilograms | April 4, 2006 |
| 31 | 818 Kilograms | April 4, 2006 |
| 32 | 2,800 Kilograms | February 7, 2006 |
| 33 | 4,467 Kilograms | January 13, 2006 |
| 34 | 1,567 Kilograms | January 11, 2006 |
| 35 | 811 Kilograms | November 30, 2005 |
| 36 | 2,000 Kilograms | August 26, 2005 |
| 37 | 2,040 Kilograms | August 23, 2005 |
| 38 | 1,902 Kilograms | July 28, 2005 |
| 39 | 1,300 Kilograms | July 27, 2005 |
| 40 | 3,971 Kilograms | July 23, 2005 |
| 41 | 1,700 Kilograms | July 11, 2005 |
| 42 | 1,100 Kilograms | July 9, 2005 |
| 43 | 3,120 Kilograms | July 8, 2005 |
| 44 | 4,000 Kilograms | July 6, 2005 |
| 45 | 1,500 Kilograms | June 10, 2005 |
| 46 | 1,811 Kilograms | June 2, 2005 |
| 47 | 2,500 Kilograms | May 24, 2005 |

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 48 | 4,127 Kilograms | April 4, 2005 |
| 49 | 2,000 Kilograms | March 16, 2005 |
| 50 | 3,980 Kilograms | March 11, 2005 |
| 51 | 2,000 Kilograms | February 12, 2005 |
| 52 | 1,850 Kilograms | December 22, 2004 |
| 53 | 1,589 Kilograms | December 20, 2004 |
| 54 | 1,850 Kilograms | November 11, 2004 |
| 55 | 1,830 Kilograms | September 13, 2004 |
| 56 | 1,888 Kilograms | July 29, 2004 |
| 57 | 1,800 Kilograms | December 7, 2003 |
| 58 | 234 Kilograms | October 4, 2003 |
| 59 | 265 Kilograms | August 13, 2003 |
| 60 | 700 Kilograms | July 26, 2003 |
| 61 | 300 Kilograms | June 26, 2003 |
| 62 | 288 Kilograms | June 19, 2003 |
| 63 | 300 Kilograms | June 10, 2003 |
| 64 | 300 Kilograms | May 31, 2003 |
| 65 | 1,817 Kilograms | May 31, 2003 |
| 66 | 2,200 Kilograms | May 14, 2003 |
| 67 | 415 Kilograms | April 21, 2003 |
| 68 | 460 Kilograms | April 7, 2003 |
| 69 | 1,500 Kilograms | January 15, 2003 |

<u>Violations Seventy Through Seventy-Two</u>
(International Cocaine Distribution with the Cifuentes-Villa Organization)

10.     On or about the dates listed below, all dates being approximate and inclusive, the defendant ISMAEL ZAMBADA GARCIA, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offenses involved a substance containing cocaine, a Schedule II controlled substance, in the amounts listed below, in violation of Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code, Section 2:

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 70 | 450 Kilograms | December 2008 |
| 71 | 400 Kilograms | February 3, 2006 |
| 72 | 2,000 Kilograms | January 25, 2004 |

<u>Violations Seventy-Three Through Seventy-Eight</u>
(International Cocaine Distribution with Other South American Suppliers)

11.     On or about the dates listed below, all dates being approximate and inclusive, the defendant ISMAEL ZAMBADA GARCIA, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offenses involved a substance containing cocaine, a Schedule II controlled substance, in the amounts listed below, in violation of Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii), and Title 18, United States Code, Section 2:

| VIOLATION NUMBER | APPROXIMATE AMOUNT OF COCAINE | DATE(S) OF OFFENSE |
|---|---|---|
| 73 | 373 Kilograms | January 15, 2014 |
| 74 | 456 Kilograms | June 6, 2013 |
| 75 | 1,000 Kilograms | October 7, 2009 |
| 76 | 4,716 Kilograms | September 13, 2008 |
| 77 | 5,000 Kilograms | September 9, 2008 – September 12, 2008 |
| 78 | 19,000 Kilograms | March 18, 2007 |

<u>Violations Seventy-Nine Through Eighty-Four</u>
(Cocaine and Heroin Distribution)

12.　　On or about the dates listed below, all dates being approximate and inclusive, the defendant ISMAEL ZAMBADA GARCIA, together with others, did knowingly and intentionally distribute and possess with intent to distribute one or more controlled substances, which offenses involved (i) a substance containing cocaine, a Schedule II controlled substance, and (ii) a substance containing heroin, a Schedule I controlled substance, in the amounts listed below, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i) and 841(b)(1)(A)(ii)(II), and Title 18, United States Code, Section 2:

| VIOLATION NUMBER | JURISDICTION | APPROXIMATE AMOUNT OF CONTROLLED SUBSTANCES | DATE(S) OF OFFENSES |
|---|---|---|---|
| 79 | District of Arizona | 25 Kilograms of cocaine | September 27, 2013 |
| 80 | District of New Jersey | 511 Kilograms of cocaine; and 3 Kilograms of heroin | September 4, 2004 |
| 81 | Eastern District of New York | 1,997 Kilograms of cocaine | January 28, 2003 |
| 82 | Northern District of Illinois | 1,925 Kilograms of cocaine | August 16, 2002 |

| VIOLATION NUMBER | JURISDICTION | APPROXIMATE AMOUNT OF CONTROLLED SUBSTANCES | DATE(S) OF OFFENSES |
|---|---|---|---|
| 83 | Eastern District of New York | 1,923 Kilograms of cocaine | May 24, 2002 |
| 84 | Western District of Texas | 1,100 Kilograms of cocaine | September 15, 1999 |

Violation Eighty-Five
(Murder Conspiracy – Persons Who Posed a Threat to the Sinaloa Cartel)

13.     In or about and between January 1989 and January 2024, both dates being approximate and inclusive, the defendant ISMAEL ZAMBADA GARCIA, together with others, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two through Four, did knowingly and intentionally conspire to kill and cause the intentional killing of one or more persons, to wit: persons who posed a threat to the Sinaloa Cartel, and such killings did result, contrary to Title 21, United States Code, Section 848(e)(1)(A), in violation of Title 21, United States Code, Section 846.

(Title 21, United States Code, Sections 848(a), 848(b) and 848(c); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT TWO
(International Cocaine, Heroin, Methamphetamine,
Marijuana and Fentanyl Manufacture and Distribution Conspiracy)

14.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

15.     In or about and between January 1989 and January 2024, both dates being approximate and inclusive, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El

Senor," together with others, did knowingly and intentionally conspire to manufacture and

distribute one or more controlled substances, which offense involved: (a) a substance containing

cocaine, a Schedule II controlled substance; (b) a substance containing heroin, a Schedule I

controlled substance; (c) a substance containing methamphetamine, a Schedule II controlled

substance; (d) a substance containing marijuana, a Schedule I controlled substance; and (e) a

substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a

Schedule II controlled substance intending and knowing that such substances would be

unlawfully imported into the United States from a place outside thereof, contrary to Title 21,

United States Code, Sections 959(a) and 960(a)(3). The amount of cocaine involved in the

conspiracy attributable to the defendant as a result of his own conduct, and the conduct of other

conspirators reasonably foreseeable to him, was at least five kilograms or more of a substance

containing cocaine. The amount of heroin involved in the conspiracy attributable to the

defendant as a result of his own conduct, and the conduct of other conspirators reasonably

foreseeable to him, was at least one kilogram or more of a substance containing heroin. The

amount of methamphetamine involved in the conspiracy attributable to the defendant as a result

of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, was at

least 500 grams or more of a mixture or substance containing methamphetamine. The amount of

marijuana involved in the conspiracy attributable to the defendant as a result of his own conduct,

and the conduct of other conspirators reasonably foreseeable to him, was at least one thousand

kilograms of a substance containing marijuana. The amount of fentanyl involved in the

conspiracy attributable to the defendant as a result of his own conduct, and the conduct of others

reasonably foreseeable to him, was at least 400 grams or more of a substance containing fentanyl.

(Title 21, United States Code, Sections 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(F), 960(b)(1)(G), 960(b)(1)(H) and 963; Title 18, United States Code, Sections 3238 and 3551 et seq.)

COUNT THREE
(Cocaine Importation Conspiracy)

16.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

17.     In or about and between January 1989 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally conspire to import a controlled substance into the United States from a place outside thereof, which offense involved a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 952(a) and 960(a)(1). The amount of cocaine involved in the conspiracy attributable to the defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, was at least five kilograms or more of a substance containing cocaine.

(Title 21, United States Code, Sections 960(b)(1)(B)(ii) and 963; Title 18, United States Code, Sections 3551 et seq.)

COUNT FOUR
(Cocaine Distribution Conspiracy)

18.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

19. In or about and between January 1989 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1). The amount of cocaine involved in the conspiracy attributable to the defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, was at least five kilograms or more of a substance containing cocaine.

(Title 21, United States Code, Sections 846 and 841(b)(1)(A)(ii)(II); Title 18, United States Code, Sections 3551 et seq.)

## COUNT FIVE
(International Distribution of Cocaine –
Approximately 373 Kilograms of Cocaine)

20. The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

21. On or about January 15, 2014, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT SIX
(Cocaine Distribution –
Approximately 25 Kilograms of Cocaine)

22.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

23.     On or about September 27, 2013, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

COUNT SEVEN
(International Distribution of Cocaine –
Approximately 456 Kilograms of Cocaine)

24.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

25.     On or about June 6, 2013, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT EIGHT
(International Distribution of Cocaine –
Approximately 1,302 Kilograms of Cocaine)

26.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

27.     On or about May 2, 2010, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT NINE
(International Distribution of Cocaine –
Approximately 1,000 Kilograms of Cocaine)

28.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

29.     On or about October 7, 2009, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT TEN
(International Distribution of Cocaine –
Approximately 450 Kilograms of Cocaine)

30.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

31.     In or about December 2008, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT ELEVEN
(International Distribution of Cocaine –
Approximately 400 Kilograms of Cocaine)

32.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

33.     On or about February 3, 2006, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT TWELVE
(International Distribution of Cocaine –
Approximately 12,000 Kilograms of Cocaine)

34.    The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

35.    In or about September 2004, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT THIRTEEN
(International Distribution of Cocaine –
Approximately 10,500 Kilograms of Cocaine)

36.    The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

37.    In or about August 2004 and September 2004, both dates being approximate and inclusive, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States

from a place outside thereof, which offense involved five kilograms or more of a substance

containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT FOURTEEN
(International Distribution of Cocaine –
Approximately 8,000 Kilograms of Cocaine)

38.     The allegations contained in paragraphs one through five are realleged and

incorporated as if fully set forth in this paragraph.

39.     In or about and between January 2004 and March 2004, both dates being

approximate and inclusive, the defendant ISMAEL ZAMBADA GARCIA, also known as "El

Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El

Senor," together with others, did knowingly and intentionally distribute a controlled substance,

intending and knowing that such substance would be unlawfully imported into the United States

from a place outside thereof, which offense involved five kilograms or more of a substance

containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and

960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

## COUNT FIFTEEN
(International Distribution of Cocaine –
Approximately 2,000 Kilograms of Cocaine)

40.     The allegations contained in paragraphs one through five are realleged and

incorporated as if fully set forth in this paragraph.

41.     On or about January 25, 2004, the defendant ISMAEL ZAMBADA

GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El

Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally

distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(c), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 2, 3238 and 3551 et seq.)

### COUNT SIXTEEN
(Use of Firearms)

42.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

43.     In or about and between January 1989 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to one or more drug trafficking crimes, to wit: the crimes charged in Counts One through Four, and did knowingly and intentionally possess such firearms in furtherance of said drug trafficking crimes, one or more of which firearms was brandished and discharged and one or more of which firearms was a machinegun.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(c)(1)(B)(ii), 2 and 3551 et seq.)

### COUNT SEVENTEEN
(Conspiracy to Launder Narcotics Proceeds)

44.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

45.     In or about and between January 1989 and January 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ISMAEL ZAMBADA GARCIA, also known as "El Mayo," "Mayo Zambada," "Doctor," "La Doc," "Doctora," "El Lic," "Mike" and "Mayo El Senor," together with others, did knowingly and intentionally conspire to: (i) conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: narcotics trafficking, in violation of Title 21, United States Code, Sections 841(a)(1), 846, 848, 952(a), 959 and 963, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and to avoid one or more transaction reporting requirements, contrary to Title 18, United States Code, Section 1956(a)(1)(B); and (ii) transport, transmit and transfer monetary instruments and funds from a place in the United States to and through one or more places outside the United States, to wit: Mexico and Colombia, (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(2)(A), and (b) knowing that the funds represented the proceeds of some form of unlawful activity and knowing that the transportation, transmission and transfer were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and to avoid one or more

transaction reporting requirements, contrary to Title 18, United States Code, Section 1956(a)(2)(B).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT ONE
(Continuing Criminal Enterprise)

46.    The United States hereby gives notice to the defendant that, upon conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), which requires any person convicted of such offense to forfeit any property constituting, or derived from, proceeds obtained, directly or indirectly, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense, and any of their interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise, including but not limited to at least approximately a sum of money equal to $14 billion in United States currency.

47.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS TWO THROUGH FIFTEEN
(Cocaine, Heroin, Methamphetamine, Marijuana and/or Fentanyl Trafficking)

48.     The United States hereby gives notice to the defendant that, upon conviction of any of the offenses charged in Counts Two through Fifteen, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853, which requires any person convicted of such offenses to forfeit any property constituting, or derived from, proceeds obtained, directly or indirectly, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses including but not limited to at least approximately a sum of $14 billion in United States currency.

49.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT SIXTEEN
(Use of Firearms in Furtherance of Drug Trafficking)

50.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Sixteen, the government will seek forfeiture in accordance with Title 21, United States Code, Section 924(d), which requires any person convicted of such offense to forfeit any firearm or ammunition involved in or used in any knowing violation of such offense.

51.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(p) and 924(d))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT SEVENTEEN
(Money Laundering)

52.     The United States hereby gives notice to the defendant that, upon

conviction of the offense charged in Count Seventeen, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 982, of all property involved in such

offense, and all property traceable to such property, including but not limited to at least

approximately a sum of $14 billion in United States currency.

53.     If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982, to seek

forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982)

A TRUE BILL

FOREPERSON

By Carolyn Pokorny, Assistant U.S. Attorney

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

MARLON COBAR
Digitally signed by MARLON COBAR
Date: 2024.01.23 18:00:44 -05'00'

MARLON COBAR
CHIEF
NARCOTIC & DANGEROUS DRUG
SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

ISMAEL ZAMBADA GARCIA,

Defendant.

## INDICTMENT

(T. 21, U.S.C., §§ 841(b)(1)(A)(ii)(II), 846, 848(a), 848(b), 848(c),  853(a), 853(p), 959(c), 959(a), 960(a)(3), 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(F), 960(b)(1)(G), 960(b)(1)(H), and 963; T. 18, U.S.C., §§ 2, 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(c)(1)(B)(ii), 924(d), 982, 1956(h), 3238 and 3551 et seq.)

*A true bill.*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _*day,*

*of* _ _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _ _

*Robert M. Pollack, Assistant U.S. Attorney (718) 254-6232*