

U.S. Department of Justice

United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

FJN/RMP:AA/LAB
F. #2009R01065//OCDETF#NY-NYE-616

October 16, 2024

BY ECF AND EMAIL

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ismael Zambada García, et al.
               Criminal Docket No. 09-466 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter to notify the Court of a potential conflict involving Frank Perez, Esq., who represents the defendant Ismael Zambada García in the above-captioned matter. The potential conflict arises from defense counsel's on-going representation of the defendant's son, Vicente Zambada Niebla ("Zambada Niebla"), in United States v. Joaquín Guzmán Loera, et al., No. 9-cr-383 (NDIL) and United States v. Ismael Zambada-Garcia, et al., No. 3-cr-34 (DDC). Zambada Niebla resolved those cases by pleading guilty pursuant to a cooperation agreement with the government, and pursuant to his obligations under that agreement, he testified in this district in the trial of Joaquín Guzmán Loera, also known as "El Chapo." Zambada Niebla's testimony in the El Chapo trial included details about his own role in the drug trafficking activities of the defendant, and about the historical relationship between El Chapo and the defendant. El Chapo and the defendant were initially charged together in this district in 2009 for their conduct related to co-founding and running the Sinaloa Cartel (the "Cartel"). Following El Chapo's arrest, capture, and prosecution in this district, the defendant continued to run the Cartel until his arrest on July 25, 2024. The defendant is currently charged with substantially the same crimes that El Chapo was charged with and convicted of at trial—with the addition of conduct extending into 2024 and relating to fentanyl, a drug that the Cartel began to manufacture and distribute in recent years.

      The government advises the Court of this information about a potential conflict pursuant to its obligation under Second Circuit precedent so that the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982). See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995). The government also respectfully requests that the Court appoint Curcio counsel so that the Court can conduct a Curcio inquiry during the appearance scheduled for October 18, 2024.

I.   Background

For well over three decades, the defendant Zambada García, also known as "El Mayo" and "Mayo Zambada," has been one of the most prolific and powerful narcotraffickers in the world. Together with El Chapo, the defendant co-founded in the late 1980s the brutally violent drug trafficking organization known as the Sinaloa Cartel and he has reigned ever since—until just a few months ago—as one of its principal leaders. The defendant and El Chapo—who was captured in 2016, and later extradited and convicted in the EDNY in 2019—formed a partnership that led to the Sinaloa Cartel becoming one of the world's largest drug trafficking organizations.

During El Chapo's trial, the defendant's son, Zambada Niebla, while being represented by Mr. Perez, testified as a government witness about, among other things, how his father and El Chapo ran the Sinaloa Cartel together. He also described his role in the Cartel working for his father and El Chapo. In May 2019, Zambada Niebla was sentenced in the Northern District of Illinois to 15 years of imprisonment and a term of supervised release, which he recently completed. Notwithstanding Zambada Niebla completing his time of incarceration and supervised release, as a government cooperator, he has an ongoing obligation to the United States to testify if called upon. It is the government's understanding that Mr. Perez remains Zambada Niebla's counsel, while also representing the defendant in the case presently before the Court.

II.  THE COURT SHOULD APPOINT CURCIO COUNSEL AND
     HOLD A CURCIO HEARING

After making an inquiry, if the Court finds that there is a potential conflict in light of Mr. Perez's representation of the defendant and ongoing representation of his son Zambada Niebla, a government witness and the defendant's co-conspirator, the Court should appoint Curcio counsel and hold a Curcio hearing. At the hearing, the Court can determine whether there is a potential conflict of interest, whether it is waivable and whether the defendant wishes to make an informed and knowing wavier of the potential conflict.

A.   Applicable Law

  1.   Overview

"The right to counsel guaranteed by the Sixth Amendment is a fundamental right." Cuyler v. Sullivan, 446 U.S. 335, 343 (1980). Though "[t]he Sixth Amendment guarantees a criminal defendant an effective advocate," it does "not necessarily" guarantee a defendant "the advocate of his or her choosing." United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004).

"Where a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981). Therefore, while there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious

conflict." Jones, 381 F.3d at 119; see also Wheat v. United States, 486 U.S. 153, 164 (1988) (recognizing the "presumption in favor of" a defendant's "counsel of choice," but holding that "that presumption may be overcome . . . by a showing of a serious potential for conflict").

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

2. Discretionary Disqualification

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163), aff'd, United States v. Genua, 274 F. App'x 53 (2008).

3. Conflicts That May Be Waived

A district court is "obligated to investigate" a "possible conflict of interest" when one is raised. Malpiedi, 62 F.3d at 468 n.2. Some conflicts, once investigated, cannot be waived. "If the court discovers that the attorney suffers from a severe conflict—such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation—the court is obliged to disqualify the attorney." Levy, 25 F.3d at 153. If that is not the case, and "a rational defendant *could* knowingly and intelligently desire the conflicted lawyer's representation," the court must "obtain directly from the defendant a valid waiver of his right to a non-conflicted lawyer." Id. (emphasis added).

The procedure to obtain that waiver is set out in Curcio., 680 F.2d at 888-90. Summarizing Curcio procedures, the Second Circuit instructs trial courts to:

> (i) advise the defendant of the dangers arising from the particular conflict;
> (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the

3

risks after encouraging him or her to seek advice from independent counsel.

United States v. Iorizzo, 786 F.2d 52,59 (2d Cir. 1986); see also Curcio, 680 F.2d at 888-90. "[A] knowing and intelligent waiver" of a defendant's right to non-conflicted counsel, Levy, 25 F.3d at 152, "obviate[s] the need for [a] court[] of appeals to engage in the 'intricate task' of resolving Sixth Amendment conflict of interest claims," United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, because a defendant is entitled to non-conflicted counsel even during the plea-bargaining stage of an indictment, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. And "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it follows that a defendant has a right to conflict-free representation during the plea negotiation stage, which, in cases like this one, requires a Curcio hearing. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948)).

4. Prior Representation of Government Witness/Co-conspirator

Particular concerns arise in cases like this one, where a defendant seeks the representation of an attorney that represents or has represented a government witness in the same or related case. An attorney's prior representation of a government witness or co-conspirator creates "an unavoidable conflict of interest." Iorizzo, 786 F.2d at 57; Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's duties to a former client"). That is because "an attorney's absolute duties of loyalty and confidentiality" apply to both current and former clients. United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); see N.Y. Rules of Professional Conduct, Rule 1.9. And "a lawyer's obligation to protect confidences and secrets of a client continues after the termination of employment." United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994). Therefore "unless the former client waives these obligations, the attorney's representation creates the potential for a serious conflict of interest." Yannotti, 358 F. Supp. 2d at 295.

An attorney's prior or current representation of a government witness or co-operator necessarily limits their representation of a defendant in the same or a related case. While representing a current client, a lawyer may not "use confidential information" of a "former client . . . to the disadvantage of the former client." N.Y. Rules of Professional Conduct, Rule 1.9. Moreover, in representing a current client, "[a]n attorney is barred from making an argument or cross-examining a former client in a way that could affect the client adversely in a present proceeding." United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006).

The duty of loyalty to his other client thus effectively precludes a lawyer from vigorously cross-examining the other client or commenting on his credibility, which may be

4

essential to the effective representation of the current client. See United States v. Kelly, 870 F.2d 854, 856-57 (2d Cir. 1989) (finding disqualification necessary because the defendant's interests would best be served by "vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests"—a task that defense counsel could not perform without "violat[ing] the rights of the informant" to expect continued loyalty and confidentiality from his former attorney); Malpiedi, 62 F.3d at 469 (finding that the lawyer was prohibited from "conduct[ing] a thorough, no-holds-barred cross-examination . . . because of [the lawyer's] obligations as [the witness's] prior attorney").

Notwithstanding the limitations outlined above, a defendant can generally waive potential conflicts arising from his attorney's prior representation of a co-conspirator. See Perez, 325 F.3d at 124 (citing United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). The Second Circuit has recognized that "[o]ur cases . . . support allowing waiver of the conflict that arises when an attorney must cross examine a former client in order to effectively represent a current client." United States v. Oberoi, 331 F.3d 44, 50 (2d Cir. 2003). Such a waiver is allowed because:

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."

Perez, 325 F.3d at 124 (quoting Fulton, 5 F.3d at 613).

5. Representation of Father and Son

A "classic conflict of interest situation" also arises "where two criminal defendants, a father and a son, [are] represented by one attorney." United States v. Cirrincione, 780 F.2d 620, 628 (7th Cir. 1985). That is because where a father and son are represented by the same lawyer, "circumstances might present themselves where the interests of the respective defendants may diverge, thus presenting a dilemma for counsel who must choose to advance the interests of one defendant over the other." United States v. Mazzariello, No. 13CV211A, 2014 WL 29369, at *4 (W.D.N.Y. Jan. 3, 2014). And, when a lawyer represents father and son, as is true in other "multiple representation context[s]," that lawyer may develop "an actual, as opposed to a potential, conflict of interest when 'during the course of the representation, the defendants' interests . . . diverge with respect to a material factual or legal issue or to a course of action.'" United States v. Fulton, 5 F.3d 605, 609 (2d Cir. 1993)

6. Cumulative Prejudice

The possible prejudicial effects of conflicted representation are cumulative. In cases where, as here, numerous conflicts are raised, "each cannot be considered in isolation, but rather must be considered together when assessing whether there is a congruence of interests between the lawyer and his client." Rahman, 861 F. Supp at 274; see also Levy, 25 F.3d at 157.

5

B. <u>Analysis</u>

Because Mr. Perez represents Zambada Niebla, a co-conspirator of the defendant and cooperating government witness, with on-going obligations under his cooperation agreement, and currently represents the defendant in a case arising out of the same subject matter, a potential conflict of interest exists. Specifically, Mr. Perez's duties of loyalty and confidentiality to each client could impede him from counseling the defendant as to viable defense strategies and from representing him vigorously and dutifully both at the pre-trial and trial stages of this matter.

Based on these previous representations of potential government witnesses and co-conspirators, the government requests that the Court appoint <u>Curcio</u> counsel and hold a <u>Curcio</u> hearing on these potential conflicts. The <u>Curcio</u> hearing will provide an opportunity for the defendant to consider these potential conflicts with independent counsel.

III. <u>Proposed Questions</u>

Should the Court determine that the defendant can waive the potential conflicts of interest, the government proposes that the Court advise the defendant as follows:

> I am advised that your attorney has also represented an individual the government has identified as a co-conspirator and cooperating witness—specifically, your son, Vicente Zambada Niebla. Your attorney has certain ethical obligations to this other client. For example, it may be a conflict of interest for your attorney to investigate leads, introduce evidence or make arguments on your behalf that might tend to incriminate or cast doubt on his other client.
>
> Your attorney also may have privileged information from his other client that could assist in your defense but that he cannot disclose because of his ethical duties. It also is possible that another attorney could take a certain position during the course of plea negotiations with the government, at sentencing or after sentencing with respect to your involvement (or non-involvement) in the crimes charged against you or your relationship with your co-conspirator, whereas your attorney may be ethically barred from pursuing such a defense strategy due to contrary information he may have obtained from his other client.
>
> There may be other issues, in addition to the ones that I've just described, that can arise in which your attorney's ability to do certain things might be affected by the fact that he has represented another client in matters related to this case. No one can foresee every possible conflict of interest.

Generally speaking, you have the right to be represented by the attorney of your choice, and I have every reason to believe that Mr. Perez is capable of adequately representing you. You may continue to have Mr. Perez represent you if you so desire, but there are some risks for you in proceeding with Mr. Perez, and I must ask you a series of questions to assure myself that you understand the risks and still want to proceed with Mr. Perez.

Do you have any questions about what I have just explained to you? Can you tell me in your own words what you understand the potential conflicts of interest to be?

You have the right to be represented by an attorney who does not have any possible conflicts of interest in representing you at all stages of this case, including any plea negotiations. If you proceed with your attorney, you will be giving up that right. Do you understand that?

Have you discussed these issues with your attorney?

You also have the right to consult with an independent attorney who can advise you about the possible conflicts of interest that might arise if you proceed with Mr. Perez as your attorney. Do you understand that?

You are not under any pressure to make a decision about this right now. You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyer or with another, independent lawyer before you advise the Court what you wish to do. Do you feel you have had enough time to consult with your attorneys and are you comfortable making a decision now?

Are you willing to give up the rights that I just described to have counsel free of any conflict, so that you can proceed with Mr. Perez as your counsel?

IV. Conclusion

For the foregoing reasons, the government respectfully requests that the Court appoint Curcio counsel, notify the defendant of the potential conflicts raised above, and conduct an appropriate inquiry pursuant to Curcio.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/ Francisco J. Navarro
Francisco J. Navarro
Robert M. Pollack
Adam Amir
Lauren A. Bowman
Assistant United States Attorneys
(718) 254-7000


MARLON COBAR, CHIEF
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By: /s/ Melanie Alsworth
Melanie Alsworth
Kirk Handrich
Trial Attorneys


OF COUNSEL
MARKENZY LAPOINTE
United States Attorney
Southern District of Florida

By: /s/ Andrea Goldbarg
Andrea Goldbarg
Assistant United States Attorney


cc: Frank Perez, Esq. (counsel to defendant)
Clerk of Court (BMC)